OPINION OF THE COURT — by the
Hon. POWHATTAN ELLIS.
APPEAR PROM THE SUPERIOR COURT OP CHANCERY POE THE WESTERN District.
The complainant sets forth in his bill: — That on the 3d day of July, in the year of our Lord one thousand eight hundred and twenty-one, a public sale of the land of the United States was held in the town of Washington, in obedience to the proclamation of the President of the United States, at which sale Elijah Smith became the purchaser ofsundry tracts or parcels of land, amounting in the whole to about the quantity of seven hundred and sixty-five acres. That said Smith made full payment for the land so purchased, and obtained from the Register of the land office, west of Pearl River, final certificates according to the laws of the United States. That *177 ' afterwards, on the 12th of September 1821, complainant become the purchaser of the above named land from said Smith, for the sum often ’ thousand dollars, and recoived a deed of conveyance. It is further stated, ' that complainant expected to obtain peaceable possession of the premises aforesaid; but contrary to this expectation, one Stephen Henderson, of the State of Louisiana, has placed thereon one Edmund Guice, under pretence of having claim to said land, and of having sold the1 same1 to one George Salked, and utterly refused to give .-possession, notwithstanding the sale aforesaid. It is further stated, that Henderson has instructed Guice, to resist by force the surveyor of the public lands, in surveying the tract purchased as aforesaid, and threatens to commit waste thereon, by cutting down the timber, and removing or destroying the improvements on the premises, although the said defendants well know the said lands to belong lawfully and of right to the complainant. The bill concludes with a prayer “for an injunction to stay waste.1” To which bill the defendants filed a general demurrer, upon which issue was taken. At a superior court óf chancery for the Western District, held on the second Monday of January, 1833, the demurrer was argued before the chancellor, and after due consideration sustained, and complainant’s bill dismissed with costs. From which decree there was an appeal to this court. The only question submitted to the consideration of the court, is, whether the complainant is entitled to an injunction to stay waste, when the defendant is stated to be in possession, and holds over under an adverse claim. We think not, and we are supported in this opinion by all the adjudged cases in England and America. In Pittsworth vs. Heapton, 6 Vesey, Lord Chancellor Eldon says, I do not recollect that the court has ever granted an injunction against waste under any such circumstances; I remember perfectly being told from the bench very early in my life, that if the plaintiff filed a bill for an account and an injunction to restrain Waste, stating that the defendant claimed by a title adverse to his, he stated himself out of the court as to the injunction. See also Davis vs. Leo, same authority. So in the case of Norway vs. Rowe, 19 Vesey, 153, if the bill contains a statement, admitting even the pretence of a claim, on the part of the defendant, the plaintiff will have to go out of court. In the case of Stone vs. Maum, 4 Johnson’s Chancery Reports, 21, an injunction to stay waste *178 will not be granted, when the title of the plaintiff is doubtful, and whoii the defendant is in possession by an ádvérse claim-. In the case before us,there is a controversy about the right and title to the land in question, as appears by complainant’s own shewing. When it is alleged in his bilí “he hoped to have obtained quiet and peaceable possession of said lands, - according to the acts of Congress under the authority of which they were sold, and the usages in like cases. But’contrary to this expectation, a certain Stephen Henderson of the state of Louisiana, has placed thereon one Edmund Güice, under pretence of having claim to such lands, and of having sold the Same ’to one George Salked,” thereby directly admitting the adverse claim of the defendant, who remains in the possession of the premises. Uuder such circumstances, we cannot do otherwise than affirm the.decree of the court below. There was no necessity for the defendant to answer, because the plaintiff has admitted every thing necessary to enable him to avail himself of the law upon those facts by way of demurrer. If this was an application for and injunction to stay the hand of a lawless- trespasser, the court would still be more circumspect, in compelling the plaintiff to show unquestioned evidence of title. The reason of the rule must be obvious. The party complaining could not invoke the aid of the chancellor unless in a case of irreparable injury and how could a tresspasser do an irreparable injury to lands of complainant’s. He admits defendant’s claims under pretence of title. When in looking over this class of cases, I cannot find a precedent until the time of Lord Thurlow, who relaxed the rigor of the rule when irreparable ruin would have followed his refusal, as in 6 Yesey.
Where plaintiff the proprietor of two adjoining closes, under which were mines, one of them being demised to defendant, who opened a mine upon the one demised to him. This was hold to be waste from the priority, and when application was made for an injunction to prevent him from digging in the other close, Lord Thurlow hesitated much, but at last granted the injunction. First upon the ground of irreparable ruin to the property asa mine; secondly, — it was a. species of trade; and thirdly, upon the principle of this court enjoining in matters of trespass, where irreparable damage „is the consequence. So it seems if the party has an adequate remedy at law, the court will not grant an injunction, unless the applica *179 tion be made under very special circumstances, as in Stevens vs. Buck-man, 1. Johnson’s Chancery Reports, 318. In some cases the court will interfere in simple trespass, (although the injury may not be irreparable,) in order to prevent multiplicity of suits, such for instance as the quieting of the rights disputed between the Lords of Manors and their tenants. ,So also the disputes between the tenants of one Manor and those of another, for it would be to no use that each party should institute his separate action of trespass, since it would only determine his individual right and not settle the controverted point as to all those who may feel themselves interested. If the facts alleged in complainant’s bill be in the nature of a tort without irreparable injury, the remedy is at law, and if the tortfeizer receives a benefit from the trespass, an action shall survive against the executor. Then, upon general principles, the chancellor will not interfere, unless this remedy should prove inadequate to afford relief, if it does a court of equity will decree an account to be taken.
Chief Justice Hampton concurred.